## A09A0577. THOMAS v. THE STATE.
### (677 SE2d 433)

MILLER, Chief Judge.

Following a bench trial, Johnathan Thomas was convicted of criminal trespass (OCGA § 16-7-21). Thomas appeals from the trial court's order denying his motion for a new trial, arguing that his trial counsel rendered ineffective assistance by failing to advise him of his right to trial by jury. Thomas further contends that the trial court erred by finding that he knowingly, intelligently, and voluntarily waived his right to a jury trial and by denying his request for court-appointed counsel. Discerning no error, we affirm.

The State's first witness at Thomas' bench trial was Nathan Buckles. On November 1, 2007, Buckles was standing in the front yard of his house when he noticed four males hanging around an unoccupied, newly-built home down the street. Buckles saw the four men walk around to the back of the home and begin throwing rocks at it. Buckles immediately called 911 on his cell phone and was able to provide a detailed description of the four individuals he saw.

Buckles continued to watch the men as he waited for the police to arrive. Buckles heard glass breaking and watched as one of the men tried to kick in the door to the garage. After the door had been kicked in, all four men entered the back garage door to the home. The men stayed in the house for two or three minutes and then came back out. The police arrived minutes later. At that point, Buckles saw one of the men walking leisurely toward the corner. Noticing that the police were not paying attention, Buckles approached the man and told him that he needed to "hang tight" and "talk to the police about

what [he] and his three buddies were doing at the house." According to Buckles, the man claimed that he was coming from his girlfriend's house but could not tell Buckles where his girlfriend lived. Buckles identified Thomas as the individual he confronted that day.

After Buckles testified on direct examination, the trial court engaged in the following colloquy with Thomas:

> THE COURT: . . . Before you do that, let me cover one thing. Mr. Thomas, I intended to ask you on the record before we got started with the witnesses here. You understand that in proceeding with a bench trial here without a jury, you are waiving your right to have a jury trial. You don't have to do that if you don't want to. You still don't have to do that if you don't want to. If you would rather proceed with a jury, you have the absolute right. Six citizens of this county would be impaneled to hear your case and decide guilt or innocence and all six of them would have to be persuaded beyond a reasonable doubt that you committed the offense. Waiving that right with just a judge, in this case myself, hearing the evidence, only I have to be persuaded beyond a reasonable doubt that you committed the offense. I am confident that you have already had a conversation with Mr. Monroe about that and the advantages and disadvantages of doing it one way or the other, and I'm not trying to tell you which way you ought to go. But it is part of my job to make sure you understand that's a right you'd be giving up by proceeding here today. Are you comfortable that that is what you want to do, Mr. Thomas?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Very good. And I felt comfortable, Mr. Monroe, that you had covered that, but that's what I'm supposed to do. You can proceed.

After the State rested, Larry Penn and Jamison Walker, testifying for the defense, admitted that they were present at the unoccupied home on November 1, 2008 but denied that Thomas was with them. They claimed, however, that they happened to see Thomas walking by that day, coming from his girlfriend's house.

1. Thomas argues that he received ineffective assistance of counsel because his trial counsel failed to advise him of his constitutional right to a jury trial. We disagree.

"To prevail on a claim of ineffective assistance of trial counsel, a defendant bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency." (Citation and punctuation omitted.) *Defrancisco v. State*, 289 Ga. App. 115, 117 (1)

(656 SE2d 238) (2008). "The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous." (Citation omitted.) *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001). "In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Citation and punctuation omitted.) *Wroge v. State*, 278 Ga. App. 753, 755 (2) (629 SE2d 596) (2006).

At the hearing on Thomas' motion for new trial, Thomas' trial counsel testified that during his initial consultation with Thomas and Thomas' mother, they discussed the issue of a jury trial. According to Thomas' trial counsel, that is one of the first things he does with clients because one of the paragraphs in his contract discusses whether the client wants a jury trial or a nonjury trial. Trial counsel testified that he recalled Thomas' mother confusing the terms and that, as a result, he "broke down" the difference between a bench trial and a jury trial. Trial counsel further stated that he told Thomas that he had a right to a jury trial, it was his choice how to proceed, and he had a right to waive a jury trial. Trial counsel did not get any indication that Thomas did not understand that he had a right to a jury trial.

Based on trial counsel's testimony, the trial court was "persuaded . . . that the right to a jury trial was in fact discussed [between Thomas and his counsel]." The trial court reached this conclusion despite the fact that Thomas denied that trial counsel had advised him of that right and Thomas' mother, after first claiming that trial counsel did not discuss the right to a jury trial, then stated, variously, that trial counsel did not go "in depth" with Thomas about the subject and that she could not recall whether trial counsel told Thomas about the right to a jury trial. The trial court was authorized to believe trial counsel's testimony over that of Thomas and his mother (*Warren v. State*, 283 Ga. 42, 44 (6) (656 SE2d 803) (2008)), and thereby conclude that trial counsel adequately counseled Thomas about his right to a jury trial and did not render deficient performance. See *Defrancisco*, supra, 289 Ga. App. at 119 (1) (e) (rejecting claim that trial counsel failed to advise defendant on consequences of jury trial waiver based on trial counsel's testimony, inter alia, that he and defendant discussed merits of a nonjury versus jury trial several times); *Wroge*, supra, 278 Ga. App. at 755-756 (rejecting claim that trial counsel was ineffective in advising defendant to waive jury trial based on trial counsel's testimony that he and defendant discussed the advantages and disadvantages of jury trial and potential for jury bias in case such as defendant's).

Further, given the strength of Buckles' testimony that he was watching Thomas and his friends continuously during the incident,

the trial court did not err in finding that Thomas failed to establish prejudice. In view of Buckles' testimony, Thomas failed to carry his burden of showing that a reasonable probability exists that the result of his trial would have been different if he had been tried before a jury. *Hendrix v. State*, 284 Ga. 420, 421 (2) (667 SE2d 597) (2008).

2. Thomas argues that the trial court erred in finding that he knowingly and intelligently waived his right to a jury trial. We disagree.

"The right to a trial by jury is one of those fundamental constitutional rights that the defendant must personally, knowingly, voluntarily, and intelligently choose to waive." (Citation and punctuation omitted.) *Edwards v. State*, 285 Ga. App. 227, 228 (2) (645 SE2d 699) (2007).

> When the validity of a jury trial waiver is questioned, the State bears the burden of showing the waiver was made both intelligently and knowingly either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.

(Citation omitted.) *Brumbelow v. State*, 289 Ga. App. 520, 523 (2) (657 SE2d 603) (2008). We will affirm a trial court's finding that the defendant validly waived the right to a jury trial unless the finding is clearly erroneous. *Edwards*, supra, 285 Ga. App. at 229 (2).

The record here shows that after the State's first witness testified on direct examination, the trial court explained at length the nature of the rights that Thomas was waiving by proceeding with a bench trial. When the trial court asked Thomas if he was comfortable that proceeding with a bench trial was what he wanted to do, Thomas responded affirmatively. The trial court's colloquy with Thomas, as set forth above, demonstrates that Thomas knowingly and intelligently waived his right to a jury trial. *Ray v. State*, 292 Ga. App. 575, 577 (2) (665 SE2d 345) (2008) (finding waiver valid when, after discussion of jury trial right, defendant responded affirmatively when trial court asked whether he had decided to proceed with bench trial and whether decision was made freely and voluntarily).

Thomas argues that the trial court could not obtain a valid waiver after the bench trial had commenced but cites no authority for this proposition. During the motion for new trial hearing, the trial judge stated that he typically reviews a defendant's right to a jury trial before a bench trial begins and acknowledged that the timing of the colloquy in this case resulted from an oversight. Thomas does not argue and nothing in the record indicates that the

trial judge would not have allowed Thomas to suspend the bench trial if Thomas had withheld his consent to proceeding without a jury. While the timing of the trial court's colloquy was unusual and we would not endorse a routine practice of conducting such a colloquy after a bench trial starts, under the circumstances of this case, we are not prepared to hold that Thomas' jury trial waiver was ineffective merely because the trial court inadvertently failed to discuss the issue on the record until after direct examination of the first witness. See *Brown v. State*, 277 Ga. 573, 574 (2) (592 SE2d 666) (2004) ("A defendant's consent [to a bench trial] need not be in a particular, ritualistic form.") (citation and punctuation omitted).

Given the trial court's colloquy with Thomas at trial as well as trial counsel's testimony, discussed above, that he advised Thomas of his right to a jury trial and his right to waive the same, the trial court's finding that Thomas' jury trial waiver was knowing, voluntary, and intelligent was not clearly erroneous. *Feaster v. State*, 283 Ga. App. 417, 419-420 (3) (641 SE2d 635) (2007).

3. Finally, Thomas claims that the trial court should have provided him with court-appointed counsel, arguing that the trial court, in determining that Thomas was not indigent, should not have considered the income of Thomas' mother and stepfather, with whom Thomas resided. While Thomas' affidavit of indigency is not in the record, a colloquy between Thomas and the trial court during the hearing on the new trial motion indicates that the affidavit stated, among other things, that Thomas was earning approximately $428 a month and that Thomas' stepfather had a monthly income of $4,000.

We have previously held that "[t]he determination of whether a defendant is indigent . . . lies within the discretion of the trial court, and this determination is not subject to review," and, further, that "[w]e will not look behind the court's determination of indigence." (Punctuation and footnotes omitted.) *Breazeale v. State*, 290 Ga. App. 632, 636 (8) (660 SE2d 376) (2008). As such, we cannot review Thomas' claim of error, and we reject it on that basis.

Even if we had authority to revisit the court's determination of indigence, Thomas does not point us to authority for the proposition that, if a 19-year-old defendant is still residing with his parents and lists the parents' income on an affidavit of indigency, the trial court is precluded from taking such income into account. Thomas relies on the definition of an "indigent defendant" in the statute establishing the Georgia Public Defender Standards Council, which provides, in relevant part:

"Indigent person" or "indigent defendant" means: . . . A person charged with a misdemeanor, violation of probation, or a municipal or county offense punishable by imprison-

ment who earns less than 100 percent of the federal poverty guidelines *unless there is evidence that the person has other resources that might reasonably be used to employ a lawyer* without undue hardship on the person or his or her dependents.

(Emphasis supplied.) OCGA § 17-12-2 (6) (A). This definition, to the extent applicable here, allows consideration of resources available to the defendant apart from his or her earnings.

For the reasons set forth above, we affirm the trial court's order denying Thomas' motion for a new trial.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED APRIL 9, 2009.

*Michelle R. Clark*, for appellant.

*Charles A. Spahos, Solicitor-General, Joseph L. Stone, Lydia M. Ferguson, Assistant Solicitors-General*, for appellee.